## G. CUCCIO DI G. & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. May 21, 1909.)

### No. 5,319.

1. CUSTOMS DUTIES (§ 78*)—ROTTEN FRUIT—TIME OF EXAMINATION.
    An importation of lemons was not entered until six days after arrival, and was not examined until they had lain on the dock for a week. *Held* that, as much loss probably occurred by rotting during that period, the loss discovered at such examination is not a sufficient basis for determining the condition of the fruit at the time of importation.

    [Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 78.*]

2. CUSTOMS DUTIES (§ 15*)—WHEN DUTIES ATTACH.
    The general principle of law is that duty attaches to imports immediately after their arrival within the limits of our ports, and while to ascertain the condition of perishable merchandise we may perhaps go beyond the date when the vessel containing the goods drops anchor, it would be going very far to go beyond the date of actual entry of the goods.

    [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 12; Dec. Dig. § 15.*]

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below, which is reported as G. A. 6,777 (T. D. 29,094), affirmed the assessment of duty by the collector of customs at the port of New York, on the authority of Denunzie v. U. S. (C. C.) 164 Fed. 909.

Walden & Webster (Howard T. Walden, of counsel), for importers.
D. Frank Lloyd, Asst. U. S. Atty.

PLATT, District Judge. The importers were successful in the protests which are grouped in Schedule B (Tariff Act July 24, 1897, c. 11, § 1, 30 Stat. 155 [U. S. Comp. St. 1901, p. 1632]). They failed in those contained in Schedule A. The general principle of law is that the duty attaches to the goods immediately upon their arrival within the limits of our ports. To save the importers in their contention here, we must stretch that principle, and hold that the duty does not attach until the importer has the absolute control of his goods. We may, perhaps, go beyond the date when the vessel containing the goods drops anchor; but it would be going very far to go beyond the date of actual entry of the goods.

The facts about protest 203,186 are typical of all the protests in Schedule A. The vessel arrived December 22, 1905. Entry was made December 28, 1905. Examination took place January 4, 1906. The lemons of these protests then lay upon the dock about a week after entry had been made and before examination. Much loss by rotting probably occurred during that week, and it would be a dangerous precedent to say that the loss discovered at the examination should serve as a basis for determining the condition of the fruit a week earlier. I agree with the Board that the importer has not given us sufficient evidence upon which to base the percentage of nonimportation.

The decision of the Board of General Appraisers is affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.